Both parties agree that the case should be dismissed as moot. Are you Mr. Markham? Yes, Your Honor. Okay. Now, when did this case become moot? Your Honor, I do not have the exact date, but I believe in the end of last year. Well, it was a long time ago, wasn't it? Yes, Your Honor. So we got notice of this. I had these dates written down, but I got so many pieces of paper here. But we got notice of this from counsel that, what, a week ago? October 14th. October 14th it was moot. Yes, Your Honor. And you got the papers from the office of the clerk where you were to acknowledge notice of hearing, and in that, in those papers, there's a provision that, again, if the case is moot or if it's been settled, you should advise the court immediately. It's in there. Yes, Your Honor. Yeah. But you didn't do that, did you? I apologize, Your Honor. I called the court, and I spoke with the clerk. When? About nine days ago. Nine days ago. But, you know, in the meantime, we spend a lot of time on these cases. We've got a whole file on it, see, right here. We have to go through it, go through the record. Our law clerks spend time on it. I'm talking about hours and hours and hours and hours. And you had an obligation to let us know over a year ago that this case was over and done with, and then you certainly got another notice about the time we got the materials. They come in big boxes. But you didn't do that either. I apologize, Your Honor. This is the first time I encountered this situation. And I've never been in this position before. Well, what about the government? You have an obligation here to obey the court's rules. You want all these other people to obey the rules, don't you? Yes, Your Honor. Well, you didn't obey the rules. You notified the court. What? As soon as I filed this case, it had been moved. No, I'm talking about your office. Your office didn't follow the rules. When did you notify the court? I filed the motion as soon as I personally filed it. A week ago. A week ago, right? That's when I first found out. Yeah, okay. But you didn't get a notice from the court about the hearing date with all the papers that are attached and all the rest of it that you're supposed to notify immediately if there's been a change, any settlement, anything like that. It was in there. You got a packet, didn't you? Yes. Yeah. They sent it out routinely. Did I explain it to the court?  Did I explain it to the court? Yeah. This case was briefed by an attorney. When the case was assigned to oral argument, it came to our office. Yeah. And then it was assigned to me personally, Paul Fiorina. Yeah. I received the packet. Yeah. And as part of my due diligence, I looked to see if the case status has changed. The minute I found out, I called the clerk. I drafted the motion. I put a call in to Mr. Markner, and I didn't even have time to hear his response because I wanted to get that motion to the court as soon as possible. Okay. So you got that packet about six weeks ago. The Office of Immigration Litigation got that packet. Yeah. Okay. Your office got it. Am I right? Yes, Your Honor. And so you didn't get into this stuff or look at it until a week ago? No. Is that right? Until a week ago? Correct. In the meantime, we did a lot of work on this. I understand. Spent a lot of time on it. Isn't your office set up to notify our court when a case has been mooted, which it was, I believe it was about a year and six or seven months ago? In 07. I don't have any excuses, Your Honor. I don't have a good explanation for you why this court wasn't notified a year ago. I don't have a good explanation. I can only speak for myself personally. But as soon as I found out about this, I notified the court. But you know about it, Mr. Markham. You know that it was mooted over a year ago. You never told us. Your Honor, I apologize again. I did not know that the court does not receive notification from the Board of Immigration Appeals which mooted this case or from the government. And I don't have a good explanation. Don't you have a responsibility? Your Honor. You filed an appeal, didn't you? Yes, Your Honor. Okay. Yes, Your Honor. And this is the first time I'm in this position. Have you had any other problems with our court? No, Your Honor. Never. Have you ever appeared before the commissioner? Before? I'm sorry, Your Honor. The commissioner. No, Your Honor. Have you ever appeared before the commissioner at the Ninth Circuit? Ninth Circuit, I mean. No, Your Honor. Yeah. Okay. How many cases do you handle? Immigration cases at one time? In the Ninth Circuit, Your Honor? You know we have a big problem with people who handle immigration cases who don't render competent service to their clients. It's like an epidemic. Do you know that? I can imagine, Your Honor. I have been handling immigration cases for 11 years. And I do not have many. I have maybe 10 or 15 at a time. And not all of them are immigration litigation. But I have never had problems with the court or with the client, Your Honor. Well, we have problems with them. We have lots of problems. I have problems with them. I can imagine, Your Honor. I can only apologize. It's a big part of our calendar because the Justice Department, in its wisdom, I think in one year gave us 8,000 of them. We used to have 800 a year. I understand, Your Honor. That's a lot of work. Are you admitted to practice in California? Yes, Your Honor. All right. I'm going to have to think about whether I want both of you to appear before the Commissioner and show cause because there's been a gross violation of our rules. One lesson I've learned today is that the government thinks we need to stick by those rules very closely and inflexibly. I apologize, Your Honor. This is the first time I had an oral argument scheduled. I've never had one in all these years, Your Honor. Well, I was hoping this would be a pleasant experience for you. Yes, Your Honor. And, of course, it is the kind of lesson I will not forget. You know, when you're supposed to be here, you've got to be here. We didn't excuse you, did we? It's a calendar. I understand, Your Honor. You just took it upon yourself. Well, it's dismissed. I'm not going to show up. I understand, Your Honor. But that order was never filed. I understand, Your Honor. And as soon as I learned that the case has now been dismissed, I drove here from San Diego. Okay, well, I'll... Okay, that's fine. All right, I'm glad you explained it. So what's the government going to do about this in the future? Are you going to talk to Mr. Mukasey, who's a judge himself? Your Honor, I'm certainly going to... Tell him he's got to get his shift squared away? I'm certainly going to convey the court's concerns to my superiors. Unfortunately, I have no excuse. Yeah, no. We don't live in a perfect world. I can understand your situation. You've got this big box of stuff, and you're busy with a lot of other things, and then you decide to get started on it, and then you look in there and you see this request to notify the court right away, and so you got on it, and you filed a motion to dismiss, which was probably about a month or five weeks late. See, we could have taken another case instead of spending our time on this one. Okay. Anybody want to say anything else? No, sir. You said what you did, sir. All right. Okay, I accept your apologies. Don't worry. I'm not going to... Yeah, I'm sure you won't do it again. Okay. Thank you. Thank you, Your Honor. All right. Yeah, okay. Good day. You know, I get argument from the government all the time about the courts, and, you know, you can't do this, you can't do that, you've got to follow the rules, you don't have jurisdiction here, don't bother us about this, but you've got to follow the rules too, or the Justice Department should follow the rules as well. And I know they're busy. And that one case we had here with the waiting for the security clearance, the FBI I think gets 40,000 of those a month. Huge number of them. That's why it takes so long to get those things handled. So maybe it's not that many, but it's a long time. Took this woman in this case here, her name was Cynthia Palacios, took almost, I don't know, two years, two and a half years to get a simple check on her. All right, good day. Have a good lunch. Why don't you go out to lunch together? And give me the tab and I'll pay it, all right? But don't charge too much. Okay, see you later.
judges: Pregerson, Smith, Collins